UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUSSELL E. RENCH,

                    Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

NO.  C14-CV-5312-BHS-JLW

REPORT AND
RECOMMENDATION

## BASIC DATA

Type of benefits sought:

    (X) Disability Insurance

    (X) Supplemental Security Income

Plaintiff's:

    Sex: Male

    Age: 44 at alleged onset date

Principal Disabilities Alleged by Plaintiff:

Right shoulder dysfunction with possible rotator cuff tear, possible spinal stenosis, knee joint derangement with occasional locking, status post coronary artery disease, mental health impairments and migraine headaches.

Disability Allegedly Began: June 15, 2008

Principal Previous Work Experience: welder, mechanic, truck driver, and groundskeeper

Plaintiff Last Worked: he has not worked since his alleged onset date.

Education Level Achieved by Plaintiff: 11th grade; GED; some community college courses

REPORT AND RECOMMENDATION - 1

## PROCEDURAL HISTORY – ADMINISTRATIVE

Before ALJ Paul G. Robeck:

Date of Hearing: November 1, 2012

Date of Decision: November 21, 2012

Appears in Record at: AR 22-29

Summary of Decision:

Claimant filed prior applications alleging an onset date in May 2008; these were denied by ALJ Evans in March 2010. Claimant's new application again alleges onset in 2008, however, there is no basis to reopen ALJ Evans' decision.

Claimant has not engaged in substantial gainful activity since his alleged onset date. He has severe impairments of right shoulder dysfunction with possible rotator cuff tear, possible spinal stenosis, knee joint derangement with occasional locking, and status post coronary artery disease. His impairments, even in combination, do not qualify under the Listings.

He has the Residual Functional Capacity (RFC) to perform light work, subject to some exertional limitations. He should have only incidental public contact and should not be required to work in groups of over ten people. He is limited to only occasional lifting overhead with the right upper extremity.

He cannot perform any of his past relevant work which were medium exertion. Testimony of the Vocational Expert establishes he can perform representative jobs of mechanic supervisor, parts clerk, and food assembler. This establishes he can perform substantial work which exists in the national economy and requires a finding of "not disabled."

Before Appeals Council:

Date of Decision: March 12, 2014

Appears in Record at: AR 2-6

Summary of Decision: declined review

## PROCEDURAL HISTORY – THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff  (X) Commissioner

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

(X)  Affirm.

## SUMMARY OF RECOMMENDATION

The ALJ did not err regarding Plaintiff's severe impairments. The ALJ found that Plaintiff did not have severe impairments relating to his mental health or migraine headaches. These findings are based on substantial evidence in the record. The ALJ did not err in assessing medical opinion evidence from Dr. Brigman or in assessing Plaintiff's credibility regarding his symptoms. The ALJ did not err in determining other work Plaintiff can perform. The ALJ's decision is based on substantial evidence in the record; remand is not warranted and the Commissioner's decision should therefore be affirmed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## EVALUATING DISABILITY

The claimant, Mr. Rench, bears the burden of proving he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## ISSUES ON APPEAL

1.     Did the ALJ err in assessing Plaintiff's severe impairments?

2.     Did the ALJ err in assessing Dr. Brigman's opinion?

3.     Did the ALJ err in assessing Plaintiff's credibility concerning his symptoms?

4.     Did the ALJ err in determining other work Plaintiff can perform?

Dkt. No. 12.

///

REPORT AND RECOMMENDATION - 4

DISCUSSION

***Severe Impairments at Step Two of the Disability Evaluation***

Plaintiff has the burden of establishing disability.  To establish step two's requirement of a severe impairment, Plaintiff must prove his impairment exists by providing medical evidence consisting of signs, symptoms, and laboratory findings; Plaintiff's own statement of symptoms alone will not suffice.  *See* 20 C.F.R. §§ 404.1508, 416.908.

An impairment is found "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities and lasts longer than twelve months.  20 C.F.R. §§ 404.1520(c), 416.920(c).   An impairment is not severe if it is a slight abnormality that has a minimal effect on the ability to do basic work activities.  SSR 96-3p.  At step two of the evaluation the ALJ found Plaintiff has severe impairments of "right shoulder dysfunction with possible rotator cuff tear, possible spinal stenosis, knee joint derangement with occasional locking, and status post coronary artery disease."  AR 24.  Plaintiff asserts the ALJ should have also found migraine headaches and "mental health impairments" to be among his severe impairments.  Plaintiff asserts that the failure to do so is harmful because these additional impairments impact his functional limitations and RFC.

**Mental Health Impairments**

Regarding mental health impairments the ALJ found:

> Mental health records reflect two intake assessments for complaints of anxiety and depressive symptoms but no ongoing participation in treatment.  (Exhibit 13F) [AR 472-94].  There is no evidence of a mental diagnosis from an acceptable medical source.  However, giving some credence to the claimant's allegations of difficulties being in large groups, I find he should have only incidental public contact and should not be required to work in groups of over 10 people.

AR 27.

REPORT AND RECOMMENDATION - 5

1    The ALJ's reasoning that Plaintiff has no severe mental health impairment is based on

2    substantial evidence in the record.  The ALJ analyzed the evidence Plaintiff cites in support of

3    his claim.  The evidence is, as the ALJ notes, counseling intake assessments and initial

4    treatment plans.  *See* AR 472-94.  These forms were filled out by social workers Lyndsay

5    Parker and Jeremy Greenwood.  The counselors' notes indicate Plaintiff self-referred because

6    he wanted to learn coping skills for better managing his stress, anxiety, and depression.  Their

7    notes are brief, and are based on Plaintiff's reports; they do not suggest severe mental problems

8    or recommend he seek psychiatric help.  *See* AR 477, 480.

9    Plaintiff asserts this evidence, especially in light of the findings of a prior ALJ decision

10   that found a mood/affective disorder among his severe impairments, triggered the ALJ's duty

11   to further develop the record with a mental health assessment.   An ALJ has a duty to develop a

12   record where an ambiguity exists or the record is incomplete.  *McLeod v. Astrue*, 640 F.3d 881,

13   885 (9th Cir. 2011) ("ALJ's duty to develop the record further is triggered only when there is

14   ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

15   evidence.") (citations omitted).

16   Here, the record reflects no such ambiguity or indication of an incomplete record.  The

17   ALJ here is not bound by the former ALJ's denial which was final and not reopened.  Plaintiff

18   has the burden to establish his impairments.  Regardless, the first ALJ (whose decision stands)

19   found a somewhat different set of severe impairments: "osteoarthritis and allied disorders;

20   affective/mood disorders; and, migraine headaches."  AR 96.  This finding was based on only

21   mild/moderate restrictions in functional areas that the ALJ found giving Plaintiff "the benefit

22   of the doubt" and noting that in January 2009 assessing psychologist Dr. Robinson found only

23   mild restrictions in all functional categories and opined his mental impairments were not

24   severe.  AR 97.

Plaintiff further alleges the ALJ in the present case had a duty to utilize the "special technique" in analyzing his mental health impairments under *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000). However, an ALJ is required to perform this analysis where a "colorable claim of mental impairment" has been made. *See* 20 C.F.R. § 404.1520a, 416.920a; *Keyser v. SSA*, 648 F.3d 721, 726 (9th Cir. 2011) (ALJ's failure to comply with 20 C.F.R. § 404.1520a is not harmless if the claimant has made a colorable claim of mental impairment.) (citations omitted). Here, the ALJ noted the absence of any mental health diagnosis from an acceptable source; therefore the special technique was not required. Plaintiff points to his earlier ALJ denial as evidence of a colorable claim, but, using the special technique there, the earlier ALJ found at most mild/moderate restrictions in functional areas, giving Plaintiff "the benefit of the doubt" and noting psychologist Dr. Robinson found only mild restrictions in all functional categories and opined his mental impairments were not severe. AR 97. The ALJ in the present case is not required to give the same benefit of the doubt. Plaintiff fails to show the ALJ's analysis here is not based on substantial evidence.

Regardless, even if it were error not to include any mental health impairment among Plaintiff's severe or nonsevere impairments, such error would be harmless in this case because the ALJ also analyzed whether any mental health limitations impacted Plaintiff's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ committed harmless error in failing to include a severe impairment at step two where that impairment's limitations were factored into the RFC); *Burch v. Barnhart*, 400 F.3d 676, 682, (9th Cir. 2005) (Harmless error where the ALJ omitted obesity as a severe impairment but nonetheless factored resulting limitations into the RFC determination).

Here, the ALJ weighed whether any mental-related symptoms impacted Plaintiff's RFC, and found they did so only to the extent that he should limit working in groups to a

REPORT AND RECOMMENDATION - 7

maximum of ten people and have only incidental contact with the public.  AR 25, 27.  Nothing in the record indicates further limitation is required.  The ALJ based this finding on substantial evidence in the record, including Plaintiff's testimony that he has trouble being around large groups of people and is better around small groups.  *See* AR 46-8.

**Migraine headaches as a severe impairment**

Defendant argues that Plaintiff's headaches were not diagnosed by an acceptable medical source and they are therefore not a medically determinable severe impairment.  Dkt. 13 at 2-3.  The ALJ noted Plaintiff's testimony that he has migraine headaches three to four times in a week, for which he takes Tylenol, stays in a dark room, and puts a cold washcloth over his eyes.  AR 26, 55.  Plaintiff's record contains several complaints of migraines.  In June 2011 Dr. Brigman noted a history of vascular headaches but did not diagnose or prescribe medication.  AR 380-2.  The ALJ noted vascular headaches were reported in this examination but that Dr. Brigman reported his only objective finding was regarding Plaintiff's limited right shoulder mobility.  AR 26, 382.  In October 2011 ARNP Carlson noted a reported history of migraine (AR 454); in January 2012 ARNP Kerber prescribed Imitrex to see if it would help control his symptoms (AR 461).

Per the instructions of ARNP Kerber, Plaintiff was to take one tablet at the onset of a migraine, repeating every two hours if needed.  He was to follow up with ARNP Kerber regarding the effectiveness of the medication.  AR 461.  Ten months later, at the ALJ hearing in November 2012, Plaintiff reported he takes only Tylenol or Ibuprofen for his headaches and did not mention taking Imitrex or other prescription medication for headaches.  Plaintiff testified that sometimes this helps but sometimes it does not, and that being off his feet and lying down relaxing eases the pain so he can better deal with it.  AR 55.  Plaintiff does not

1  contend that the prescription did not help or even that he tried taking it.  Such conservative

2  treatment with only nonprescription medication does not support finding a severe impairment.

3     Plaintiff also argues the prior ALJ found migraine-related limitations.  In the prior

4  denial, the ALJ found "a mild impairment in the ability to concentrate; he has migraine

5  headaches, but takes pain relief medication, however, occasionally his headaches effect his

6  concentration ability to moderate limitation."  AR 98.  The ALJ noted a report that his sinusitis

7  causes migraine headaches and the flash from his welding job makes the pain worse.  AR 99.

8  Thus, the ALJ found that only occasionally the headaches cause moderate limitations in

9  concentration, apparently treating with nonprescription medication.

10    Because there is some evidence of complaints of migraines the ALJ here should have

11 considered these complaints and analyzed whether they result in any work-related limitations,

12 severe or nonsevere.  However, Plaintiff provides no evidence of a severe impairment or that it

13 would result in greater limitations than his RFC already allows for, particularly if he were

14 compliant with his prescribed medication.  Based on this minimal evidence of conservative

15 treatment and no evidence of limitation after compliance with medication, the court finds the

16 ALJ's error in failing to further analyze Plaintiff's headaches, harmless.

17 ***Plaintiff's Credibility Regarding Symptom Severity***

18    The ALJ determined that Plaintiff's "statements concerning the intensity, persistence

19 and limiting effects of these symptoms are not fully credible for the reasons set forth below."

20 AR 26.  The ALJ then provided two pages of analysis of objective medical evidence, medical

21 opinion evidence, and Plaintiff's reported activities and hearing testimony.  AR 26-7.  Absent

22 evidence of malingering, an ALJ must provide clear and convincing reasons to reject a

23 claimant's testimony about the severity of his symptoms.  *See Lingenfelter v. Astrue*, 504 F.3d

24

REPORT AND RECOMMENDATION - 9

1028, 1036 (9th Cir. 2007).  "General findings are insufficient; rather, the ALJ must identify

what testimony is not credible and what evidence undermines the claimant's complaints."

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  In weighing a claimant's credibility, the

ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or

between his testimony and his conduct, his daily activities, his work record, and testimony

from physicians and third parties concerning the nature, severity, and effect of the symptoms of

which he complains.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations

omitted).  Here, the ALJ cites no evidence of malingering.  Therefore, the "clear and

convincing" standard applies.

The ALJ gives several reasons for finding Plaintiff's symptom allegations not as severe

as alleged, supported by convincing examples in the record: (1) Plaintiff alleges his condition

has worsened since the prior ALJ decision but the medical record reflects no significant

changes.  AR 26.  The ALJ permissibly considered this evidence.  Contradiction with medical

records is sufficient to reject subjective testimony.  *See Carmickle v. Comm'r*., 533 F.3d 1155,

1161 (9th Cir. 2008).  The ALJ noted Plaintiff's physical examination results regarding chest

pain, shoulder pain, knee pain, low back pain, and headaches but gave only little weight to Dr.

Brigman's opinion regarding Plaintiff's limitations reasoning they are inconsistent with

minimal findings on examination and subsequent imaging studies from July and September

2011.  AR 26.  (2)  Plaintiff's activities are inconsistent with Dr. Brigman's opinion.  AR 26-7.

The court notes the ALJ intermingled analysis of Plaintiff's credibility with analysis of Dr.

Brigman's opinion.  While the ALJ's statement of reasons is somewhat scattered in his

decision, the reasons cited are accurately based on substantial evidence in the record.  The ALJ

cites as examples Plaintiff's activities such as helping a handicapped hunter, fishing, repairing

vehicles, doing household chores, riding a bicycle for transportation, and doing some welding.

1    (3) Plaintiff's allegations of debilitating pain are undermined by his minimal treatment.  The

2    ALJ notes for example that Plaintiff underwent only a brief course of physical therapy and that

3    he takes no prescription medication.  AR 27.  The ALJ then discusses opinions from two nurse

4    practitioners, one of whom found him capable of light work and the other found him capable of

5    modified sedentary/light work.  AR 27, 445.  The ALJ's cited reasons for finding Plaintiff's

6    credibility reduced as to his symptom severity are clear, convincing, and based on substantial

7    evidence in the record.  Plaintiff takes a different reading of particular evidence but does not

8    demonstrate the ALJ's conclusion that his symptoms are not as severe as he alleges is in error.

9

10   ***Dr. Lance Brigman, Examining Physician***

11       Plaintiff asserts the ALJ erred in giving little weight to the opinion of examining

12   physician, Dr. Brigman.  In June 2011 Dr. Brigman opined "…in an eight hour day, [Plaintiff]

13   could probably sit off and on for two hours, he could stand off and on for about one to two

14   hours and he could walk off and on for maybe an hour."  AR 381.  The ALJ discussed Dr.

15   Brigman's opinion, giving it little weight.  AR 26.

16       If the ALJ rejects a treating or examining physician's opinion that is contradicted by

17   another doctor, he must provide specific, legitimate reasons based on substantial evidence in

18   the record.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *Valentine v. Comm'r of Soc.*

19   *Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  Here, the ALJ instead placed significant

20   weight on the opinion of state agency reviewing physician, Roy C. Brown, M.D., who in June

21   2011 opined Plaintiff could perform light work limited to sitting, standing, or walking for a

22   total of six hours in an eight hour workday.  AR 27, 156-58.  Dr. Brown noted that Dr.

23   Brigman's opinion "is not supported by the medical evidence, including exams and imaging."

24   AR 156.  The ALJ added that Plaintiff should be limited to only occasional overhead lifting

REPORT AND RECOMMENDATION - 11

1   with the right upper extremity.  AR 27.  The ALJ gave three specific and legitimate reasons for

2   discounting Dr. Brigman's opinion: (1) it is inconsistent with the minimal findings on

3   examination; (2) it is inconsistent with subsequent imaging studies; and (3) it is inconsistent

4   with Plaintiff's activities.  AR 26.  The ALJ supports each of these reasons with examples

5   based on substantial evidence in the record.  *See* AR 26-27.

6          Plaintiff contends the ALJ "ignored" evidence that he had difficulty sitting on the exam

7   table without getting numbness and tingling in his feet, evidence he asserts shows he would

8   have difficulty maintaining a sitting position.  Dkt. 12 at11.  However, Dr. Brigman noted it

9   was based on Plaintiff's subjective complaints:  "When he was sitting on the table, he

10  complained of his right foot going numb and that was diffusely all over his right foot and not

11  localized on one side or the other."  AR 381.  Presumably, Plaintiff would not be working with

12  his feet dangling from a medical examination table.  Plaintiff also asserts the ALJ did not

13  explain why the imaging of his shoulder is inconsistent with reduced range of motion in that

14  shoulder.  However, consistent with Plaintiff's shoulder imaging, the ALJ's RFC assessment

15  allows for "only occasional lifting overhead with the right upper extremity."  AR 25.  Plaintiff

16  does not show that more is required.

17         As to his daily activities, Plaintiff asserts they are not done in a manner indicating

18  transferability to a work setting under *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

19  Plaintiff does not dispute that he does all of these activities but asserts he does them only

20  occasionally and with breaks.  However, the ALJ does not cite Plaintiff's activities as being

21  transferable to a work setting, but finds Plaintiff's wide range of physical activities such as

22  assisting with deer hunting (the week of the hearing), doing tune ups, restoring cars and

23  motorcycles, fishing, as well as the ability to perform household chores and ride a bicycle for

24  his main form of transportation, to be inconsistent with the limited abilities found by Dr.

REPORT AND RECOMMENDATION - 12

1   Brigman.  Plaintiff does not demonstrate error.  The ALJ's assessment and crediting of Dr.

2   Brigman's opinion is supported by specific and legitimate reasons that are based on substantial

3   evidence in the record.  The ALJ's decision will be disturbed only if it is not supported by

4   substantial evidence or is based on legal error.  *See* 42 U.S.C. § 405(g).

5

6   ***The ALJ's step five finding of other work Plaintiff can perform.***

7           Plaintiff asserts under SSR 82-41[1] the ALJ failed to show his previous work skills are

8   transferable to the type of other work the ALJ found he could perform.  Plaintiff previously

9   worked as a welder, truck driver, groundskeeper and mechanic.  Plaintiff argues the ALJ did

10  not discuss whether his skills from his past work as a welder, truck driver, or mechanic are

11  transferable to perform the jobs of mechanic supervisor, parts clerk, or food assembly work.

12  Plaintiff reasserts his arguments regarding alleged mental impairments, discussed above, and

13  argues this work is outside his skill level or in a different industry.

14          Defendant argues under 20 C.F.R. § §404.1564(b)(4), 416.964(b)(4) that where

15  Plaintiff has a high school education it is presumed he can do semi-skilled through skilled

16  work, and argues because Plaintiff is under 55 years old the ALJ was entitled to presume

17  Plaintiff could do the jobs identified without assessing transferable work skills.

18          It is inappropriate for a vocational expert to conclude that a claimant can transfer to a

19  different job in a wholly different industry that requires more than the minimal adjustment

20  contemplated under the regulation.  *See Renner v. Heckler*, 786 F.2d 1421, 1424 (9th Cir.

21  _____

    [1] SSR 82-41provides in relevant part: When the issue of skills and their transferability must be
22  decided, the adjudicator or ALJ is required to make certain findings of fact and include them in
    the written decision. Findings should be supported with appropriate documentation.
23  When a finding is made that a claimant has transferable skills, the acquired work skills must be
    identified, and specific occupations to which the acquired work skills are transferable must be
24  cited in the State agency's determination or ALJ's decision.  *SSR 82-41 available at 1982 WL
    31389 at *7.*

REPORT AND RECOMMENDATION - 13

1   1986) (vocational expert failed to demonstrate that the claimant of advanced age would be able

2   to perform the jobs identified with very little, if any, vocational adjustment because "[e]ach of

3   these jobs appears to require some adjustment to new industries and work settings"); *see also*

4   20 C.F.R. §§ 404.1563, 416.963.

5        Here, the ALJ did not make an explicit determination regarding transferability of

6   Plaintiff's skills, and did not note whether such determination was required with Plaintiff's

7   circumstances.  Plaintiff was 49 years old and not near the advanced age category of 55 or

8   older.  Regardless, at the hearing, the vocational expert ("VE") testified Plaintiff's job as a

9   welder/fitter is classified as medium work, skilled, with a specific vocational profile ("SVP"),

10  essentially a skill level, of 7.  His work as a groundskeeper is medium work, semi-skilled, with

11  an SVP of 3.  Plaintiff's work as a truck driver is medium work, semi-skilled, with an SVP of

12  4, and as a mechanic his work was medium, skilled, with an SVP of 7.  AR 57-58.  The ALJ

13  asked the VE to assume a hypothetical individual with the same "age, education, and work

14  background" as Plaintiff, having the same RFC as the ALJ included in his written decision.

15  AR 58.  The VE testified work that Plaintiff could perform would include a mechanic

16  supervisor, skilled, light work with an SVP of 7; a parts clerk which is skilled with an SVP of

17  5; and food assembler which is semi-skilled with an SVP of 3.  The VE also noted all these

18  jobs could be performed sitting or standing at the worker's option.  AR 62.

19       Although the ALJ did not specifically asking the VE whether a claimant with Plaintiff's

20  skills could transfer them to the other work, Plaintiff cites no evidence that more than a

21  minimal adjustment would be required or that he would be unable to perform the jobs

22  identified by the VE.  The skill levels of these jobs (SVPs of 7, 3, 4, 7, respectively) are greater

23  than or equal to the skill levels of the other work cited (SVPs of 7, 5, 3, respectively).  The jobs

24  of mechanic supervisor and parts clerk are in the same general industry as that in which

1    Plaintiff testified he has years of extensive experience.  The food assembler job is clearly in

2    another industry but is on the lower end of semi-skilled work having a SVP of only 3.

3    Moreover, Plaintiff testified that he had special mechanical aptitude and could put together

4    anything from a house to a car, based on his great ability to visualize how things go together

5    and then construct them.  *See* AR 43, 52.  Based on Plaintiff's testimony and his significant

6    skilled work experience as a mechanic, it is difficult to believe he would be unable to perform

7    a food assembly job.  Therefore, if the ALJ erred at all in this determination, it was harmless.

8                                            CONCLUSION

9            For the foregoing reasons, the Court recommends that this case be AFFIRMED and the

10   case DISMISSED.  A proposed order accompanies this Report and Recommendation.

11   Objections to this Report and Recommendation, if any, must be filed with the Clerk and

12   served upon all parties to this suit no later than fourteen (14) days after the date on which this

13   Report and Recommendation is signed.  If no timely objections are filed, the Clerk shall note

14   this matter for the earliest Friday after the deadline for objections, as ready for the Court's

15   consideration. Failure to file objections within the specified time may affect the parties' right

16   to appeal.  If objections are filed, any response is due within fourteen (14) days after being

17   served with the objections.  A party filing an objection must note the matter for the court's

18   consideration fourteen (14) days from the date the objection is filed and served.  Objections

19   and responses shall not exceed twelve pages.

20           DATED this 22nd day of December, 2014.

21

22                                                          _____

23                                                          JOHN L. WEINBERG
                                                            United States Magistrate Judge

24

REPORT AND RECOMMENDATION - 15